United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN DIMMICK,<br><br>    Plaintiff,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant.<br>_____/ | No. C 04-4965 PJH<br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION FOR JUDGMENT ON THE PLEADINGS; FURTHER INSTRUCTIONS RE: C 04-4965 PJH** |
| KEVIN DIMMICK,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant.<br>_____/ | No. C 05-0971 PJH |

Before the court is the government's motion for judgment on the pleadings as to Plaintiff Kevin Dimmick's ("Dimmick") first amended complaint ("1AC"), as supplemented by plaintiff's more definite statement ("MDS"), and also for dismissal or amendment of the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 10(b). These motions pertain to case number 05-971 PJH only. Having read the papers and carefully considered the relevant legal authority, the court GRANTS both motions in part and DENIES them in

part for the reasons that follow.

**BACKGROUND**

Dimmick is a disabled veteran with AIDS who sought to enroll in an investigational drug study at the Veterans' Administration Medical Hospital of San Francisco ("VA Hospital"). He claimed that the VA Hospital and other organizations affiliated with the VA Hospital, including the Regents of the University of California ("the Regents") and Northern California Institute for Research and Education ("NCIRE"), conspired to deny him medical care and forced him to take medications which had previously caused negative side effects. Dimmick also claimed that Dr. Lampiris of the VA Hospital failed to obtain a proper informed consent from him, and that Dr. Marmar of the VA Hospital defamed him to third parties by referring to him as mentally ill. Lampiris and Marmar are both members of NCIRE's board of directors.

Dimmick sued the Regents and private companies NCIRE, Boehringer-Ingleheim ("BI"), and Abbott Laboratories ("Abbott") in the C 04-4965 PJH action, and the government in the C 05-0971 PJH action. These two cases have had a complex procedural history. Dimmick originally filed one consolidated case in San Francisco Superior Court against all these parties and various federal employees of the VA Hospital. The government removed the case entitled *Dimmick v. Volberding*, C 04-1480 PJH, to federal court. This court then dismissed the federal defendants in case number C 04-1480 PJH, because Dimmick had not exhausted his administrative remedies against them, and remanded the remaining claims against the non-federal defendants to state court.

Dimmick then filed a second amended complaint in state court, which did not explicitly name any federal employees but which contained claims against private parties for the actions of VA employees. The government then removed the case a second time, at which point it became *Dimmick v. NCIRE*, C 04-4965 PJH. Dimmick moved to remand the case, but at the hearing on the motion, he withdrew his motion to remand and agreed to proceed on those claims in federal court.

Dimmick then filed a third amended complaint ("3AC") in C 04-4965 PJH and, after exhausting administrative remedies as required by the Federal Tort Claims Act ("FTCA"), filed a third lawsuit, this time against the government, *Dimmick v. U.S.*, C 05-0971 PJH. The two cases have been related but not consolidated on this court's docket.

All parties moved to dismiss the 3AC complaint in *Dimmick v. NCIRE*, C 04-4965 PJH. The court granted the motion to dismiss but also granted leave to amend one last time. Additionally, at Dimmick's request, the court granted Dimmick leave to amend the complaint in *Dimmick v. US*, C 05-0971 PJH. Order Dismissing TAC ("May 23, 2005 Order").

Dimmick then filed a fourth amended complaint ("4AC") in case number 04-4965 PJH and a first amended complaint ("1AC") in case number 05-0971 PJH in June 2005. After the filing of the 4AC, BI and Abbott settled their claims with Dimmick and were dropped from *Dimmick v. NCIRE*, C 04-4965 PJH.

In September 2005, this court granted NCIRE's motion to dismiss the claims against it in 04-4965 PJH, and judgment was entered as to NCIRE on October 19, 2005. The court, however, denied the Regents' motion to dismiss in 04-4965 PJH. Accordingly, the only claims that remained in 04-4965 PJH after this court's September 2005 order were the seventh and eighth claims for breach of contract and declaratory judgment against the Regents. The Regents subsequently filed an answer to the 4AC in 04-4965 PJH on October 19, 2005, and there have been no further motions in that case.

In the September 2005 order, the court also denied the government's motion to dismiss the single negligence claim asserted under the FTCA in *Dimmick v. U.S.*, 05-0971. The court, however, granted the government's motion for a more definite statement ("MDS"), and stated as follows:

> The 1AC is not a model of clarity and is at times internally inconsistent. The cause of action for negligence is found at ¶ 51 (A)-(C). Dimmick alleges in section (A) that the U.S. owed no fewer than a dozen duties to him under federal and state laws and regulations, and under "their own standard of care documents." However, no regulations are cited, no VA standard of care documents are referenced, and the only law cited is California Health &

3

Safety Code § 24173 or 24178. It is not clear to the court whether Dimmick is claiming that each of the listed duties owed to him are derived from the cited provisions of California law, or from some other unidentified source. With regard to sections (B) and (C), no source is provided at all. The U.S. is correct that the complaint is vague and ambiguous. Frankly, it is impossible to determine whether Dimmick has stated a cause of action for negligence based on the breach of a duty whose origin has not been specified. While these three sections of ¶ 51, clearly set forth the conduct of the U.S. at issue, it is impossible for the defendant to frame a response to the pleading because it does not put them or the court on notice as to why the alleged conduct amounted to negligence.

The court concluded in the September 2005 order:

Because the court cannot find that Dimmick has or has not stated a claim for negligence against the U.S., the motion to dismiss is DENIED. However, the motion for a more definite statement is GRANTED. Because Dimmick's pleadings have been a moving target, with the theories and wrongdoers changing in every iteration, Dimmick shall <u>not</u> file a fifth amended complaint. Rather he shall file a document entitled simply, "More Definite Statement," in which he shall provide the origin of the duties he alleges were owed to him by the U.S. as set forth in ¶ 51 § (A) - (C). Dimmick may <u>not</u> take this opportunity to again change or enlarge upon his allegations. The statement must simply track and explain the allegations already set forth in the 1AC at ¶ 51. Even though the 1AC is Dimmick's third attempt at pursuing a proper action against the U.S., he is being afforded this opportunity because with a statement of the origin of the duties he alleged were breached, the U.S. should be able to frame a responsive pleading. The statement shall be filed within fifteen days of the date of this order. The U.S. shall thereafter answer the 1AC as amplified by the more definite statement, within twenty days of the filing of the statement.

**DISCUSSION**

A.   Legal Standards

    1.   Rule 10(b)

FRCP 10(b) provides in pertinent part that:

Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth.

"Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000) (quoting 2 Moore's Federal Practice § 10.03[2][a]). "Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and

4

where separate statements will facilitate a clear presentation." *Id.*

        2.     Rule 12(c)

The standard applied on a Rule 12(c) motion for judgment on the pleadings is the same as that applied to 12(b)(6) motions: judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *See Hal Roach Studios, Inc. v. Richard Feiner & Co*, 896 F.2d 1542, 155 (9th Cir. 1989). As with motions to dismiss under Rule 12(b), a motion for judgment on the pleadings ordinarily may not be based on matters outside the pleadings. However, if extrinsic evidence is presented and the court is willing to consider it, then the motion is "converted" to one for summary judgment. *See id.* at 1550.

    B.     Government's Rule 10(b) Motion

Dimmick's 1AC asserts a single negligence claim. The government argues that this claim should be broken down into four separate claims pursuant to FRCP 10(b). According to the government, these separate occurrences or transactions include:

(1) the VA doctors' failure to obtain plaintiff's informed consent prior to prescribing him drugs;

(2) the VA doctors' failure to obtain plaintiff's informed consent prior to performing human experiments on him;

(3) the government's failure to establish and implement complaint procedures without reprisal or retaliation; and

(4) the VA's failure to "treat plaintiff with dignity, compassion and respect" and to protect him from harm.

The government also argues that this court should dismiss Dimmick's claims based on his failure to set them out separately as required by Rule 10(b).

Dimmick responds that his claims arise from essentially the same occurrence. He argues that "[w]hile there may be nuances that are distinct to each claim, the basic elements are the same." He concedes that the only claim that might be considered a

5

separate transaction would be the allegation that the defendant failed to investigate. Dimmick further argues that if the court determines that there should be separate claims pursuant to Rule 10(b), he should be given the opportunity to amend the complaint.

The court, however, concludes that pursuant to Rule 10(b), Dimmick has asserted three – not four – claims. Those claims include:

(1) the government's alleged negligence in failing to obtain Dimmick's written informed consent prior to (a) prescribing drugs, and/or (b) performing human experiments on him;

(2) the government's alleged negligence in failing to establish complaint procedures, communicate them to Dimmick and to conduct a meaningful investigation [into] Dimmick's complaints without reprisal or retaliation against him; and

(3) the government's alleged negligence in failing to treat Dimmick with dignity, compassion, and respect, and to protect him from harm.

The court declines to break down the first claim into two separate claims, as suggested by the government, because contrary to the other claims which do appear to involve separate occurrences, this claim involves the same facts and the same underlying transactions.

Dismissal, however, is not appropriate. *See, e.g., Bautista*, 216 F.3d at 841-42 (district court's "sudden death" dismissal of plaintiff's 2AC under Rule 10(b) for failure to separate out claims was abuse of discretion even though "plaintiff's [2AC] frustrate[d] the aim of the federal rule to bring about the just, speedy and inexpensive resolution of cases" because complaint's "deficiencies were readily curable [under Rule 10(b)] with some guidance from the court"); 2 Moore's Federal Practice § 10.03[4] (2005 ed.).

The court therefore considers the government's motion for judgment on the pleadings in light of the above three claims. No further amendment of plaintiff's complaint is required or permitted.

6

C.   Government's Motion for Judgment on the Pleadings

    1.   Claim One (b) Must be Dismissed Because Dimmick was not a Human Experimentation Subject[1]

Claim one (b), that the government was required to obtain Dimmick's informed because of his status as a human experimentation subject, must be dismissed for the reasons stated by this court in its prior September 26, 2005 order and those advanced by the government.

The court's prior order concluded that, as a matter of law, Dimmick would not have become a subject in a human research study until he was the recipient of the actual drug being investigated in the study.[2] Based on the doctrine of judicial estoppel, the court held that Dimmick was barred by statements in his pleadings from asserting that he was a subject in a human research study.

Because Dimmick was never a human experimentation subject as defined in the regulations, the government was not required to obtain his informed consent. The court's previous conclusion remains the law of the case. *See Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) ("[u]nder the 'law of the case' doctrine, a court is ordinarily

---

[1] The government does not move for judgment on the pleadings based on plaintiff's claim one (a) that the government failed to obtain written informed consent prior to prescribing medication. *See* Government's Motion at 9-10 (stating that it will instead move for summary judgment on the issue). In fact, neither party has addressed the specific issue of whether defendant's prescription of medication *in anticipation of potential participation in a human experimentation study* required Dimmick's informed consent.

[2] The federal regulations relied on by the court in its September 26, 2005 order, 21 C.F.R. §§ 312.3(b) and 56.102(e), provide that:

> *Subject* means a human who participates in an investigation either as a recipient of the investigational new drug or as a control. A subject may be a healthy human or a patient with a disease.

21 C.F.R. § 312.3(b).

> *Human subject* means an individual who is or becomes a participant in research, either as a recipient of the test article or as a control. A subject may be either a healthy individual or a patient.

21 C.F.R. § 56.102(e).

7

precluded from reexamining an issue previously decide by the . . . court"). Accordingly, the court GRANTS the government's motion for judgment on the pleadings as to claim one (b).

### 2. Claims Two and Three Must be Dismissed Based on Governmental Immunity

The Federal Tort Claims Act ("FTCA") waives sovereign immunity for specified torts of federal employees acting within the scope of their employment "in the same manner and to the same extent as a private individual under like circumstances" would be liable under the law of the state "where the act of omission occurred." 28 U.S.C. §§ 1346(b), 2674. The FTCA applies only if state law would impose liability on a private person. *United States v. Olson*, 126 S.Ct. 510, 511-12 (2005) (reversing line of Ninth Circuit precedent allowing "waiver simply on a finding that local law would make a *state or municipal entity* liable," and instead holding that waiver exists only where *private person* would be liable).

In *Delta Savings Bank v. United States*, the Ninth Circuit rejected two of the plaintiff's arguments that are pertinent to the case at hand. 265 F.3d 1017 (9th Cir. 2001). The court rejected the plaintiff's argument that an "FTCA claim can be brought for violations of federal statutes that provide private *federal* causes of action, even if there is no analogous state law." *Id.* at 1024.

Additionally, the court rejected the plaintiff's argument that the state tort of negligence per se satisfied the FTCA requirements regarding state law liability. The *Delta* plaintiffs had argued "that if the forum state recognizes a claim for negligence per se for the violation of a federal statute, then the local law requirement is satisfied." *Id.* at 1026. The Ninth Circuit held that such reasoning "conflate[d] two elements of tort law: duty and the standard of care." *Id.* It held that "any duty that the United States owed to the plaintiff must be found in California state tort law," *id.* at 1025, and that California's "negligence per se doctrine does not do away with the requirement in FTCA cases that the *duty* must be created by state law." The "duty cannot spring from a federal law." *Id.* Instead, "[t]he duty must arise from state statutory or decisional law, and must impose on the defendants a

8

duty to refrain from committing the sort of wrong alleged here." *Id.*

          a.    Claim Two

Plaintiff claims that the duty to investigate and to establish complaint procedures, as set forth by the federal regulations and a VA patient's "bill of rights," is also incorporated into California statutory law. This court has reviewed the regulations and statutory provisions cited by plaintiff, and concludes that no such duties have been incorporated into state law.

In asserting that the government owed a duty to investigate his complaints and to establish a complaint procedure, plaintiff appears to rely on the following regulations: (1) 38 C.F.R. § 16.116, which governs the "general requirements for informed consent" as pertains to the Department of Veterans Affairs, and which also appears to be the one that plaintiff refers to as the "VA bill of rights;"[3] 38 C.F.R. § 17.33(g), which sets forth procedures for patients' grievances with respect to the Department of Veterans Affairs; and 38 C.F.R. § 17.85 regarding the treatment of research-related injuries to human subjects within the Department of Veterans Affairs.[4] The other regulations cited by plaintiff

---

[3] 38 C.F.R. sections 16.116(a)(6)-(8) repeat verbatim plaintiff's alleged duties regarding complaint procedures. Those sections include requirements that a subject be advised re: "any medical treatments . . . available if injury occurs. . . where further information may be obtained," and "whom to contact in the event of a research-related injury."

[4] 38 C.F.R. § 17.33(g) provides that:

Each patient has the right to present grievances with respect to perceived infringement of the rights described in this section or concerning any other matter on behalf of himself, herself or others, to staff members at the facility in which the patient is receiving care, other Department of Veterans Affairs officials, government officials, members of Congress or any other person without fear of reprisal.

Section 17.85 provides that:

VA medical facilities shall provide necessary medical treatment to a research subject injured as a result of participation in a research project approved by a VA Research and Development Committee and conducted under the supervision of one or more VA employees.

9

regarding the Department of Veterans Affairs do not pertain specifically to these duties. *See* 38 C.F.R. § 17.32 (informed consent); 17.34 (tentative eligibility).

However, to the extent that the cited federal regulations contain the duties articulated by the plaintiff, neither the regulations nor the duties set forth within those regulations have been adopted or incorporated into California law by *any of the California code sections cited by Dimmick.* This includes California H&S Code §§ 24171, 24172, 24173, *et seq.* Accordingly, because a breach of duty created by federal law is not actionable under the FTCA, and California law does not create a duty to investigate and to establish complaint procedures, there is no basis for finding a waiver of sovereign immunity. *See Delta*, 265 F.3d 1025-26. The court GRANTS the government's motion for judgment on the pleadings as to this claim.

      b.  Claim Three

Plaintiff's MDS and opposition diverge regarding the source of the government's alleged duty to treat Dimmick with dignity, compassion, and respect, and to protect him from harm. His opposition states that the duty to treat plaintiff with respect and protect him from harm is set forth in 45 C.F.R. § 46.116, which has been incorporated into California H&S code § 24178(h). This is erroneous. No such duty is set forth by that federal regulation.

However, plaintiff's MDS correctly sets forth the federal regulation pertaining to that duty. 38 C.F.R. § 17.33(a), regarding patients' rights within the VA, is apparently the source of plaintiff's right to be treated with respect, and provides that: "Patients have a right to be treated with dignity in a humane environment that affords them both reasonable protection from harm."

However, as with claim two, neither this federal regulation, 38 C.F.R. § 17.33(a) nor the duties set forth in this regulation, have been adopted or incorporated into California law by *any of the California code sections cited by Dimmick,* and thus, cannot provide the basis for waiver of governmental immunity. *See Delta*, 265 F.3d 1025-26.

The court GRANTS the government's motion for judgment on the pleadings as to claim three as well.

## CONCLUSION

Pursuant to Rule 10(b), the court concludes that plaintiff's 1AC states three claims. For the reasons set forth above, the court GRANTS the government's motion for judgment on the pleadings as to claim one (b), and claims two and three.

Accordingly, the only remaining claim in 05-0971 PJH is claim one (a), which asserts that the government was negligent in failing to obtain Dimmick's written informed consent prior to prescribing drugs in anticipation of his potential participation in the studies.

## FURTHER INSTRUCTIONS RE: 04-4965 PJH

Having reviewed the parties' January 17, 2006 letter briefs regarding remand of the case to state court, and noting that the parties were unable to reach a joint proposal regarding remand of this case, the court will permit the plaintiff to file another formal motion for remand **no later than March 1, 2006**. The court additionally orders that any further remand motion and respective opposition must address the only remaining basis for federal court jurisdiction: discovery as to federal actors. The court will decide the motion **on the papers.**

**IT IS SO ORDERED.**

Dated: February 3, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge

11